UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TRUSTEES of the CHICAGO REGIONAL COUNCIL OF CARPENTERS PENSION FUND, CHICAGO REGIONAL COUNCIL OF CARPENTERS WELFARE FUND, and CHICAGO REGIONAL COUNCIL OF CARPENTERS APPRENTICE & TRAINEE PROGRAM FUND,<br><br>          Plaintiffs,<br><br>vs.<br><br>R.C.I. ENTERPRISES, INC.,<br><br>          Defendant. | 09 C 3816<br><br>Judge Feinerman |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Trustees of the Chicago Regional Council of Carpenters fringe benefit trust funds brought this ERISA action against Defendant R.C.I. Enterprises, Inc., seeking to collect contributions allegedly owed by R.C.I. for hours worked by R.C.I. employees performing bargaining unit work. On May 23, 2011, the court granted Trustees' unopposed motion for summary judgment, awarding $21,538.40 in contributions, audit fees, interest, and liquidated damages, and ruling that Trustees were entitled to reasonable attorney fees and costs. Doc. 43. Trustees have filed a petition for fees and costs, which R.C.I. does oppose. Trustees are awarded $16,478.75 of the $18,988.75 they seek.

A district court must award "reasonable attorney's fees" to the prevailing trustee in a delinquent contributions case. 29 U.S.C. § 1132(g)(2)(D); *see Anderson v. AB Painting & Sandblasting Inc.*, 578 F.3d 542, 544 (7th Cir. 2009). As with most fee-shifting statutes, "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours

reasonably expended on the litigation multiplied by a reasonable hourly rate." *Ibid*. (internal quotation marks omitted). Adjustments then can be made to this starting point, known as the lodestar, based on the factors set forth in *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). *See Anderson*, 578 F.3d at 544 & n.1.

With respect to the hourly rate component of the lodestar, Trustees submit persuasive evidence that their attorneys' hourly rates—$180 for the junior lawyer who carried the laboring oar, and $235 and $250 for a senior lawyer—are reasonable for this type of case. *See Moriarty v. Svec*, 233 F.3d 955, 965 (7th Cir. 2000) (affirming district court finding that $165 per hour was a reasonable rate and noting that "[t]he lawyer's regular rate is strongly presumed to be market rate for his or her services"). R.C.I. does not challenge the reasonableness of the hourly rates, thus forfeiting the point. *See Stark v. PPM Am., Inc.*, 354 F.3d 666, 675 (7th Cir. 2004) ("once the attorney provides evidence of the market rate, the burden shifts to the opposing party to show why a lower rate should be awarded").

While the hourly rates are reasonable, the same cannot be said of the second component of the lodestar, the hours that Trustees' counsel expended on the case. At the outset of this litigation, Trustees relied on an audit concluding that R.C.I.'s delinquent contributions amounted to $348,880.47; they later submitted a revised audit reducing that figure to $108,162.95; and they ultimately submitted a further revised audit showing only $9,396.81 in delinquent contributions. The time that an attorney spends reviewing an audit, discussing the audit with the defendant, and making downward adjustments to delete non-bargaining unit work ordinarily is compensable. Here, however, the first two audits were so wildly inflated that it would be unreasonable to require R.C.I. to reimburse Trustees for their counsel's audit-related work. Accordingly, the following time entries are disallowed:

- 1.25 hours on 10/28/09: "Appearance before Judge Leinenweber for initial status hearing. Conference with opposing counsel regarding issues in the case and how to proceed to narrow discrepancies in the audit."

- 1.25 hours on 11/25/09: "Examine and review audit findings in preparation for meeting with opposing counsel."

- 0.25 hours on 11/30/09: "Telephone audit with opposing counsel to discuss audit findings and set a date to meet and discuss related issues."

- 1.25 hours on 12/9/09: "Confer with opposing counsel regarding meeting to discuss the audit."

- 0.75 hours on 1/26/10: "Telephone conference with opposing counsel to discuss the audit discrepancies in dispute."

- 2.75 hours on 9/20/10: "Examine and review audit and defendant's discovery responses in preparation for the deposition of Jason Lawson. Telephone conference with John Libby regarding the new rules for Flooring Addendum audits. Conference call with opposing counsel to discuss the revision of the audit. Examine and review revised audit. Conference call … regarding the same."

- 0.75 hours on 9/21/10: "Review revised audit. Conference … regarding material handlers and electronic record individuals left in the audit. Conference … regarding the same."

- 0.75 hours on 9/21/10: "Correspondence to … one of the electronic record individuals remaining in the audit, requesting him to contact me to discuss the type of work he performed for RCI."

- 0.5 hours on 9/21/10: "Meeting with Karen M. Rioux to discuss the audit adjustments under the Floor Addendum. Conference call … ."

- 0.25 hours on 9/29/10: "Telephone conference with opposing counsel regarding issues involved in the revised audit."

- 0.5 hours on 10/11/10: "Draft correspondence … regarding revised audit and the two remaining electronic record individual classified as material handlers who remain in the audit."

- 0.5 hours on 10/11/10: "Correspondence … regarding the removal of certain electronic record individuals from the audit."

- 0.25 hours on 10/12/10: "Email correspondence … regarding obtaining contact information for two electronic record individuals in the audit."

- 0.25 hours on 10/25/10: "Correspondence … regarding adjusting the audit to remove certain electronic record individuals."

- 1.0 hours on 10/28/10: "Review revised audit. Correspondence with opposing counsel regarding the same."

- 0.75 hours on 11/5/2010: "Review correspondence … regarding RCI audit and discrepancies related to [employee]. Telephone conference with opposing counsel regarding the same."

- 0.75 hours on 11/8/2010: "Correspondence and telephone conference with opposing counsel regarding the remaining discrepancies in the audit and additional documents requested."

Some of these time entries include work unrelated to reviewing the two inflated audits, but because the entries were "block-billed"—making it impossible to tell how much time was spent on the audits and how much time on compensable work—the entries are disallowed in their entirety. *See Rexam Beverage Can Co. v. Bolger*, 620 F.3d 718, 738-39 (7th Cir. 2010); *Lahiri v. Universal Music & Video Distribution Corp.*, 606 F.3d 1216, 1222-23 (9th Cir. 2010); *see also Hensley*, 461 U.S. at 437 ("The applicant should … maintain billing time records in a manner that will enable a reviewing court to identify distinct claims.").

The disallowed time consists of 13.25 hours billed by the junior attorney, whose hourly rate was $180, and 0.5 hours billed by the senior attorney, whose hourly rate at the time was $250. This results in a reduction of $2,510 from the $18,988.75 requested by Trustees, leaving a figure of $16,478.75. (R.C.I. could have sought a reduction of the auditor's fees on the same grounds at the summary judgment stage, but it did not oppose Trustees' summary judgment motion, thus forfeiting any such challenge.)

The court next evaluates whether adjustments should be made to the lodestar based on the *Hensley* factors, which are: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Hensley*, 461 U.S. at 430 n.3. R.C.I. focuses on the eighth factor, noting that while Trustees originally sought a recovery based on $384,880 in allegedly delinquent contributions, they later came to realize that the delinquency amounted to only $9,396.

The fact that Trustees' ultimate recovery reflected only three percent of the delinquent contributions originally alleged ordinarily would counsel a downward adjustment. *See Anderson*, 578 F.3d at 544 n.1 (fee award may be adjusted due to "the amounts involved and the results obtained"); *Moriarty*, 233 F.3d at 964-65 ("When the prevailing party has achieved only a limited success, the standard lodestar method may yield an excessive award and the district court may reduce the lodestar result."). No such adjustment will be made here because R.C.I.'s litigation tactics significantly increased the cost to Trustees of prosecuting this case. Three examples illustrate the point. First, R.C.I.'s failure to file a answer required Trustees to file a motion for default, which was withdrawn when R.C.I. decided to appear and answer. Docs. 9-14. Second, after R.C.I. answered, its failure to cooperate in discovery required Trustees to file a motion to compel, which was withdrawn when R.C.I. decided to produce discovery. Docs. 25-28. Third, before Trustees filed their summary judgment motion, R.C.I. could have stipulated to

$9,396 in delinquent contributions, along with the associated interest and penalties—amounts that R.C.I. never challenged and now admits it had no basis to challenge. Doc. 47 at 2. Instead, R.C.I. put Trustees to the task of preparing and filing a summary judgment motion and Local Rule 56.1 statement, which consumed a great deal of attorney time.

Having carefully reviewed both the docket sheet and Trustees' attorney billing records, the court expressly finds that, putting aside the disallowed time entries listed above, the time spent by Trustees' counsel was reasonably necessary to this case, either as part of the work any plaintiff must undertake in ERISA contribution litigation or as part of the work made necessary by R.C.I.'s litigation tactics. *See Anderson*, 578 F.3d at 546 (suggesting that fees may be appropriate regardless of size of damage award where case "could have been resolved a greatly reduced cost if [defendant] had cooperated with discovery requests"); *S Indus., Inc. v. Centra 2000, Inc.*, 249 F.3d 625, 627-28 (7th Cir. 2001). Given this, it would be inappropriate to adjust the lodestar based on the eighth *Hensley* factor.

R.C.I. does not press any of the other eleven *Hensley* factors, thus forfeiting any other arguments for making a downward adjustment to the lodestar. Accordingly, Trustees are awarded $16,478.75 in fees and costs.

July 20, 2011

_____
United States District Judge